Staples, J.,
delivered the opinion of the court.
The board of supervisors of Washington county-moved the county court of said county, at its November term 1872, for judgment against Dunn and his sureties on account of his default as sheriff', in failing to account for and pay over the county levies for the year 1869. At the December term the defendants submitted a motion to quash the notice upon which the motion of the plaintiffs was founded. The court overruled the motion to quash; and the defendants excepted. This is the defendants’ first bill of exceptions.
The ground of the motion to quash does not appear by the i'ecord; but, as stated by the counsel, it is that the notice is no.t sufficiently specific and definite to warrant a judgment thereon. In Monteith v. Commonwealth, 15 Gratt. 172, it was decided by this court, that upon a motion against a sheriff and his sureties for his failure to pay taxes due the commonwealth, it is not necessary that the notice shall state qn what bond of the sheriff the motion will be made. The rule governing notices is, that they are presumed to be the acts of parties, and not of lawyers. They are viewed with great indulgence by the courts; and if the terms of the notice be general, the court will construe it favorably, and apply it according to the truth of the case, as far as the notice will admit of such application. If it be such that the defendant cannot mistake the object of the motion, it will be sufficient. Graves v. Webb, 1 Call. 448; Segouine v. Auditor, 4 *613 Munf. 398; Steptoe v. Auditor, 3 Rand. 221. In this case the notice states, that the sheriff had collected the levies for the year 1869, and that he had failed to account for and pay over the same as required by law. It states the amount for which he was delinquent, and for that amount judgment would be asked against him and his sureties. It would seem impossible for the defendants, upon reading this notice, to misunderstand the character of the claim asserted or the grounds of the proceeding. Ve are therefore of opinion, that the county court did not err in refusing to quash the notice.
The next ground of error arises upon the defendants’ second bill of exceptions. At the January term 1874 the defendants moved the court to grant them a rule against the attorney for the commonwealth to show cause why the record of the bond of William A. Dunn, as sheriff of Washington county, should not be corrected, amended or vacated; and they asked leave to read certain affidavits in support of their motion, to the reading of which the plaintiffs objected; but the court overruled the objection, and permitted the affidavits to be read. It, however, refused to grant the rule asked for by the defendants; and to this ruling the defendants excepted. It will be observed that the application was for a rule to amend, correct or vacate the record; which of these was intended does not appear. We are not informed in what respect or to what extent the record was designed to be altered; nor are we informed whether the action of the court was desired as to all or part only of the defendants. Perhaps the object of the defendants may be more correctly gathered from the affidavits filed by them. One of these states, that the affiant signed the bond upon condition that certain other persons were also to *614 sign; but this condition had never been complied with. No such condition appears on-the face of the nor is there anything from which it would be inferred; nor is it pretended it was ever communicated to the court. Another affidavit states, that the affiant signed the bond, but he never acknowledged Qr delivered it; upon information he afterwards obtained in regard to the sheriff, he determined that he never would acknowledge the bond.
A third affidavit states that the affiant acknowledged the bond in open court, on condition, however, that all the parties who signed would also acknowledge it; but no such condition appears either by the bond or by the record. Another affiant relies upon the fact, that his signature was affixed by his nephew; and further, that his name is not in the body of the bond. It is very true that this defendant did not himself sign his name, but it was done by another in his presence, and by his direction and authority. This, of course, is equivalent to a signing by himself. The other defendant, whose affidavit was taken, states that the sheriff informed him he only wanted affiant’s name until next succeeding court, when it would be taken off the bond; and with this understanding he signed the bond; but it is not pretended that the county court was apprized of" any such arrangement.
Upon these papers the application for the rule to alter the record was based. I have taken the trouble to state the substance of them, that it may be seen how utterly groundless is the claim of the defendants, to escape the obligation of the bond executed by them. Notwithstanding this pretension of a conditional execution of the instrument, all of those making affidavits appeared before a justice or justices of the peace, and acknowledged they had respectively signed the bond *615 as sureties; and these acknowledgments were made without qualification or reservation, and with full knowledge that such acknowledgments would be before the county court by the sheriff as evidence of their execution of the bond. The fact is, that these affidavits are nothing more than pleas of non est factum in disguise. But however considered, whether as pleas or mere affidavits, whether taken singly or in the aggregate, they present no ground either-for the release of the defendants, or for a rule to amend or vacate the record.
It is very apparent the main theory of the defence is, that an acknowledgment in court is necessary, in order to bind those who sign the sheriff’s bond as sureties. This is, however, to confound the execution of the instrument with the proof. In Calwell v. Commonwealth, 17 Gratt. 391, it was decided by this court that the sureties may acknowledge the bond in court, or its execution out of court may be proved by witnesses. Such, indeed, is the language of the statute. There is, however, no statute nor rule of law requiring such proof to be adduced at the time the bond is received by the court. It is very true that a tribunal, charged with the duty of taking the bonds of public officers, would be grossly derelict in accepting a bond without satisfactory proof of its execution being adduced at the time of receiving the bond; but with, or without such proof, the parties who had actually signed would be bound by their deed. A person who signs, seals and delivers an instrument as his deed, will never be heard to question its validity upon the ground that it was not acknowledged by him, nor proved at the time of the delivery. It is the sealing and delivery that gives efficacy to the deed, not proof of the execution. And this principle applies to all bonds, whether executed *616 by public officers or private persons, unless, indeed, there is some statute making the acknowledgment- or proof in court essential to the validity of the instrument. In an action upon an official bond, if there is no record evidence, the execution of it may be established by the testimony of attesting witnesses, or, if there be none, by proof of hand-writing, or by a discovery from the adverse party. Such proof may not be as conclusive as an acknowledgment of record, but in many cases it is equally satisfactory.
In the case before us the bond was acknowledged in open court by five of the sureties, at the May term 1869. And on motion of the sheriff, he was allowed until the June term to complete it. At the June term the bond was accordingly returned with the justices certificates of acknowledgment, by nine other sureties, two of whom had become such since the preceding term. In this condition the bond was accepted by the court as a complete instrument.
There is no proof in the record; nor is there even an averment, save a brief statement made by Isaac B. Dunn in his affadavit, that any of these parties either signed or delivered the bond conditionally. All of them certainly acknowledge it without qualification, reservation or condition, either before the court or before justices of the peace in the country. How, it may be true, that the mere certificate of a justice of the peace is not competent evidence of the execution of an instrument of this character. It does not follow, however, there may not have been other proof before the county court at the time, in addition to these certificates. Non constat but that the justices themselves were in. court producing the certificates and testifying to the acknowledgment. Caldwell v. Craig, 17 Gratt. 396. Be that as it may, none of these *617 defendants deny their signatures or their acknowledge ments. Neither in the affidavits filed, nor in any other mode, so far as the record discloses, was any question or controversy on this point. And, as will be hereafter seen, this court is bound to presume that satisfactory proof as to all the defendants was adduced upon the trial of this ease in the court below.
It seems, however, there are six signatures to the bond, as to which there was no proof before the county court which recorded the bond, by acknowledgment or otherwise. There is no suggestion, however, that these signatures are not genuine, or that the bond is not valid as to the parties who made them. These obligors are not included in the plaintiffs’ notice. Why they were not so included does not appear. No complaint was made upon that ground in the court below, for the reason, no doubt, that the statute authorizes a notice and motion against all or any intermediate number. There was doubtless good ground for the omission; and, as the record discloses nothing •to the contrary, that which was done was rightfully done.
But it further appears, there are, or were, upon the bond the names of five other obligors. These names had, however, been erased, according to a statement of the deputy clerk, before the May term 1869, to which the bond was first returned. In recording the bond, these names were omitted by the clerk; so that they are not upon the instrument as recorded. Whether they were in fact genuine signatures, and, if so, why they were erased, does not appear. One thing is certain, the erasures had been made and were apparent at the time the five sureties unconditionally acknowledged the bond in open court. They were equally apparent when the bond was taken into the *618 country and unconditionally acknowledged before the-justices by nine of the sureties. So that all the predefendants may be regarded as having acknow]edged the execution of the bond with full notice of the erasures. If they did not have such notice, it was because they deliberately closed their eyes to the fact, or because they most negligently failed to examine, or even to look at, the paper at the time of the acknowledgment. The consequences of such gross negligence must, of course, fall upon the defendants, and not upon the public.
Such was the case made by the defendants upon the application for a rule to alter the record. It may be true, as I have already said, that the certificate of a justice of .the peace is not of itself competent evidence of the execution of the bond. But these certificates were exhibited by the defendants themselves; the original bond was exhibited by them; the unconditional acknowledgment was conceded in the affidavits. How then could the court grant the rule ? Hpon the defendants own showing, the papers upon which they relied showed conclusively they were not entitled to it, and fully vindicated the refusal of the county court to grant it.
It seems, however, that the defendants demurred to the record of the bond of the sheriff; and the learned judge of the circuit court was of opinion upon that demurrer the judgment of the county court ought to have been for the defendants. How conceding that a demurrer to evidence is a proper proceeding upon a mere notice and motion to be tried by the court, was it ever heard that a party could select a single item of his adversary’s testimony and demur to that? I had supposed that a demurrer of the kind could only be taken after the whole testimony is concluded, and *619 then the demurrer affirms the insufficiency of the whole testimony to sustain the issue. But this is not all. Ho one will controvert the proposition, imagine, there can be no demurrer to evidence until the trial is had. In this case the demurrer was taken at one term of the court before the trial had commenced, and before the ease was even ready for a trial, and the cause was in fact tried at the next succeeding term. If the court had held that the record was of itself insufficient to charge the defendants as sureties, it would not have precluded the plaintiffs from offering it again on the trial at the next term in connection with parol proof to supply the defect. It would have been competent to show by any relevant evidence, that all the defendants had signed, sealed and delivered the bond, although the record showed that five only had actually acknowledged it in open court. Was it any less thebond of the nine who acknowledged before witnesses, than of the five who appeared before the court? Was it not proper, and everyway permissible, to bring proof of the execution by these nine if the record failed to show it? Can we assume it was not adduced before the judge who tried the case? The record states that the whole matters of law and of fact were referred to the court. What were these matters of fact there is nothing to show. Ho bill of exceptions was taken to enlighten us in regard, to the proceedings before the court. Are we not bound to presume that everything was rightfully done? The principle is universal, that an appellate court in reviewing the decision of the trying court, will always presume that the verdict and judgment were founded upon sufficient evidence unless the contrary is plainly made to appear. This principle is carried so far, that where there is a bill of exceptions professing to state the evi *620 dence, this presumption will still prevail, unless it can be fairly inferred that it contained all the evidence ad-on the trial. See Cooper v. Hepburn, 15 Gratt. 551; Powell on Appellate Proceedings 126. In the case before us, if the defendants desired to raise the question of the sufficiency of the evidence to charge them as sureties, it was incumbent upon them to spread it upon the record, in order that the appellate court might act understandingly upon that question. Failing to do so, they are precluded from controverting the correctness of the judgment rendered by the county court. According to these views there is nothing in the second bill of exceptions which would warrant an appellate court in reversing the decision of the county court.
The defendants’ third 'bill of exceptions was taken to the refusal of the court to receive the plea of non damnifieatus and the plea of nil debet. It is somewhat difficult to understand what was the object or necessity for the various pleas tendered by the defendants.. The proceeding was a mere motion, founded upon a notice, upon which no formal pleadings were required. It was competent for the defendants; as well without as with the pleas offered by them, to make every defence those pleas suggested. But if this were not so, the plea of non damnifieatus is good only where' the condition of the bond is to indemnify and save harmless. Here the condition of the bond is “faithfully to discharge the duties of the office according to law.” To an action upon such a bond, “conditions performed” is the proper plea, and that plea was offered by defendants, and received by the court. With it the defendants were entitled to the benefit of every defence they could make under the plea of non damnifieatus. As to the plea of nil debet, it was altogether *621 improper in an action or notice upon an official bond. If, however, it were admissible, still under the plea of conditions performed, the defendants were to make any defence a plea of nil debet could possibly present. There is therefore no error appearing upon the third bill of exceptions.
The fourth bill of exceptions brings before us the pleas filed by the defendants Eobert and Joseph Pippin,, and the judgment of the court upon these pleas. Upon this point it is sufficient to say, the issues presented by these pleas were wholly immaterial. These defendants had signed the bond after the May term 1869. It was returned to the June term following with their names and with the justices’ certificate of acknowledgment. In this condition it was delivered to and accepted by the county court. As already stated, it was a valid bond as to these defendants, although never acknowledged by them nor proved in open court. The record indeed states they are surer ties; but if it was altogether silent on this subject, they would be bound by the signing, sealing and delivery, and estopped to deny they are such.
It was therefore no sufficient answer to the motion in this case to say there was no record binding these parties as sureties. Their obligations and duties resulted from the bond, and not from the record. The court would have been fully justified in rejecting the pleas in the first place; but, having received them, it was proper to disregard them upon the trial. The judgment was plainly right upon this point, whatever may have been the ground upon which the court proceeded.
We come now to the fifth and last bill of exceptions. The plaintiffs, with a view to show the amount of the county levies collected by the sheriff and never *622 accounted for by him, offered, in evidence a settlement made by the sheriff with a commissioner apby the county court. This settlement showed a balance against the sheriff for which the supervisors are proceeding in this case. The defendants objected to this evidence, upon the ground they had no notice 0f settlement, were not parties to it, and had not been notified to attend at the time it was made, as required by the 18th section of the 53rd chap, of the Code of 1860. This section certainly makes provision for summoning the sureties upon the official bond; and if so summoned the settlement would be held to be conclusive as to them. They would not be permitted to controvert it in any future proceeding. But it is not indispensable the sureties should be notified. In the absence of any notification the settlement, upon general principles, would at least be prima fade evidence of the amount of the sheriff’s indebtedness. That testimony of this character is legally admissible to charge the sureties of a public officer upon their bond of indemnity, is fully established by the decisions of this court in numerous cases. Munford &c. v. Overseers of the Poor of Nottoway, 2 Rand. 313; Jacobs v. Hill, 2 Leigh 393; Cox et als. v. Thomas, 9 Gratt. 323. In the more recent case of Crawford et als. v. Turk, 24 Gratt. 176, this court held that a judgment against the high sheriff, in the absence of fraud or collusion, is conclusive of the default of the deputy as against the sureties of the latter, the deputy having appeared and being examined as a witness in the action against the high sheriff. These were cases of judgments against the principal; but the same principle applies in the present case. See also the case of the United States v. Echsford, 1 How. U. S. R. 250; in which it was held that a treasury transcript of the *623 accounts of a collector was prima facie evidence against the sureties of moneys received by him during his term. These authorities are conclusive upon the tion of the admissibility of the settlement in this case as evidence against the defendants. This disposes of all the defendants’ bills of exceptions, and, indeed, of all the points raised by him in this court or in the court below.
Before concluding this opinion it is proper to allude to a question raised and strongly pressed.by the plaintiffs, who are the appellants here. It is in regard to the sufficiency of the first three bills of exceptions to bring before the appellate court the alleged errors set forth in those hills. It is deemed unnecessary, however, to consider these matters; as this court is of opinion the case is more satisfactorily disposed of upon the merits. Upon the whole, we are of opinion, that the judgment of the circuit court should be reversed, and that of the county court affirmed.
Judgment oe the circuit court reversed, and judgment OE THE COUNTY COURT AEEIRMED.